

1  Joseph N. Casas (SBN 225800)
   Tamara M. Craft  (SBN 234419)
2  CASAS LAW GROUP, P.C.
   2323 Broadway, Suite 202
3  San Diego, CA  92102
   Phone: (619) 692-3146
4  Facsimile: (619) 692-3196
   Email: joseph@casaslaw.com
5

6  Attorneys For Plaintiffs
   MATTHEW LA MADRID et al.
7

8              UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  MATTHEW LA MADRID d.b.a. VISION       CASE NO: 08 CV 0823 BEN POR
    QUEST INVESTMENTS, a Sole
12  Proprietorship; PREMIUM RETURN
    FUND LIMITED LIABILITY LIMITED
13  PARTNERSHIP, LLLP, a Nevada          COMPLAINT OF MATTHEW LA MADRID
    Domestic Limited Partnership;        d.b.a. VISION QUEST INVESTMENTS
14  PREMIUM RETURN FUND II LIMITED
    LIABILITY LIMITED PARTNERSHIP,          1.   R.I.C.O.
15  LLLP, a Nevada Domestic Limited         2.   DECLARATORY JUDGMENT
    Partnership; PREMIUM RETURN FUND        3.   BREACH OF CONTRACT
16  III LIMITED LIABILITY LIMITED           4.   CONSTRUCTIVE TRUST
    PARTNERSHIP, LLLP, a Nevada             5.   MONEY HAD AND RECEIVED
17  Domestic Limited Partnership; PLUS      6.   CONVERSION
    MONEY, INC., a Nevada Domestic          7.   ACTUALLY FRAUDULENT
18  Corporation;                                 TRANSFER
                                            8.   COMMON LAW FRAUD
19       PLAINTIFFS,                        9.   CIVIL THEFT
                                            10.  NEGLIGENCE
20       vs.

21  HERIBERTO LOPEZ PERALES, an             JURY TRIAL DEMANDED
    individual; DONALD E. LOPEZ, an
22  individual; HREIDAR BJORNSSON, an
    individual; MAARTEN VAN LEENEN, an
23  individual; H&W PRICE LESS, INC., a
    Texas Corporation; PALLADIUM
24  HOLDING COMPANY, a Colorado
    Corporation; and NEW VIKING, INC., a
25  Delaware Corporation; and DOES 1-50.

26       DEFENDANTS.
27

28


CASAS LAW GROUP

           COMPLAINT OF MATTHEW LA MADRID d.b.a. VISION QUEST INVESTMENTS

## I.    **JURISDICTION AND VENUE**

1.    At all relevant times to this Complaint, each of the Defendants was, and is, a "person" as that term is defined in 18 U.S.C. § 1961 and used in 18 U.S.C. § 1962.

2.    At all relevant times to this Complaint, each of the Plaintiffs was and is a "creditor" as that term is described in 11 U.S.C. § 101 *et seq.* and used in California Civil Code § 3439.01.

3.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the subject matter of this case because all or part of the claims arise from the Defendants' violations of the United States Code, including, *inter alia*, the Racketeer Influenced Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 1343 and/or the Uniform Fraudulent Transfer Act 11 U.S.C. § 101 *et seq.*

4.    Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the subject matter of the claims asserted that arise under state law and the doctrines of pendent and ancillary jurisdiction because the state law claims arise from a common nucleus of operative facts giving rise to the federal claims alleged in this action.

5.    Pursuant to 28 U.S.C. § 1332, this Court also has jurisdiction over this action based on diversity of citizenship. The matter in controversy is between parties who are citizens of different states and the amount in controversy with respect to each defendant exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6.    Pursuant to 18 U.S.C. § 1965(b) and (d) and state law, this Court has personal jurisdiction over each of the Defendants in this action because each defendant transacts business in California or has minimum contacts with California through the execution of express and/or implied contracts in California, and through each defendant's involvement with, management of, or receipt of funds from Plaintiffs, such that it is fair and reasonable for this Court to exercise jurisdiction over them.

///

///

7.    Pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, the declaratory judgment claims are appropriate because there is an actual and existing controversy between the parties over which this Court has original jurisdiction.

8.    Pursuant to 28 U.S.C. § 1391(b) venue is proper in the Southern District of California because a substantial part of the acts, omissions, or events giving rise to the action occurred in this district.

## II.    PARTIES

### A.    The Plaintiffs

9.    Plaintiff Matthew La Madrid d.b.a. Vision Quest Investments ("LA MADRID") is a resident of San Diego County, in the State of California.

10.    Plaintiff Premium Return Fund Limited Liability Limited Partnership, LLLP ("PREMIUM FUND") is a Domestic Limited Partnership existing under the laws of the State of Nevada.

11.    Plaintiff Premium Return Fund II Limited Liability Limited Partnership, LLLP ("PREMIUM FUND II") is a Domestic Limited Partnership existing under the laws of the State of Nevada.

12.    Plaintiff Premium Return Fund III Limited Liability Limited Partnership, LLLP ("PREMIUM FUND III") is a Domestic Limited Partnership existing under the laws of the State of Nevada.

13.    Plaintiff Plus Money, Inc. ("PLUS MONEY") is a domestic corporation existing under the laws of the State of Nevada.  Plaintiff PLUS MONEY is the investment adviser and manager of plaintiffs PREMIUM FUND, PREMIUM FUND II, and PREMIUM FUND III.  Plaintiff LA MADRID is the president of plaintiff PLUS MONEY.

### B.    The Defendants

14.    Plaintiffs LA MADRID, PREMIUM FUND, PREMIUM FUND II, PREMIUM FUND III, and PLUS MONEY (collectively "PLAINTIFFS") are informed and believe and thereon allege that defendant Heriberto Lopez Perales ("PERALES") is a citizen and resident of the County of Hidalgo, in the State of Texas.  PERALES is the president and

CASASLAWGROUP

1  registered agent of defendant H&W Priceless, Inc. ("H&W"). PERALES is also an

2  owner and/or director of defendant H&W.

3      15.    PLAINTIFFS are informed and believe and thereon allege that defendant

4  Donald E. Lopez ("LOPEZ") is a citizen and resident of the County of Denver, in the

5  State of Colorado. Defendant LOPEZ is the sole director and the registered agent for

6  defendant Palladium Holding Company ("PALLADIUM").

7      16.    PLAINTIFFS are informed and believe and thereon allege that defendant

8  Hreidar Bjornsson ("BJORNSSON") is a citizen and resident of the State of Florida.

9  Defendant BJORNSSON is an owner and/or director of defendant New Viking, Inc.

10     17.    PLAINTIFFS are informed and believe and thereon allege that defendant

11 Maarten Van Leenen ("VAN LEENEN") is a citizen of the Netherlands. Defendant VAN

12 LEENEN is an owner and/or director of defendant New Viking, Inc.

13     18.    PLAINTIFFS are informed and believe and thereon allege that defendant

14 H&W is a corporation organized and existing under the laws of the State of Texas, with a

15 registered agent located in McAllen, Texas. Defendant PERALES is the registered

16 agent for defendant H&W.

17     19.    PLAINTIFFS are informed and believe and thereon allege that defendant

18 New Viking, Inc. ("NEW VIKING") is a corporation organized and existing under the laws

19 of the State of Delaware. Defendants PERALES, BJORNSSON and VAN LEENAN are

20 owners and/or directors of defendant NEW VIKING. Corporation Service Company is

21 the registered agent for defendant NEW VIKING. Defendant PALLADIUM, a Colorado

22 corporation, is a subsidiary and/or agent of defendant NEW VIKING.

23     20.    PLAINTIFFS are informed and believe and thereon allege that defendant

24 PALLADIUM is a corporation organized and existing under the laws of the State of

25 Colorado and is a subsidiary and/or agent of defendant NEW VIKING. Defendant

26 LOPEZ is an owner and/or director and the registered agent for defendant PALLADIUM.

27 Defendant LOPEZ is also a director and/or owner and the registered agent for

28 Associated Companies, Inc. ("ASSOCIATED").

CASASLAWGROUP

21.    PLAINTIFFS do not presently know the true names and capacities of those persons, firms, and entities named herein as DOES 1-50.  However, PLAINTIFFS are informed and believe and thereon allege that each of the DOE Defendants are responsible in some manner for the events and happenings herein alleged and for the damages and other injuries suffered and to be suffered by PLAINTIFFS.  PLAINTIFFS reserve the right to amend this Complaint when the true names and capacities of the DOE Defendants have in fact been ascertained by PLAINTIFFS.  PLAINTIFFS are informed and believe and thereon allege that some of the DOE Defendants named are agents, employees or representatives of some of the other DOE Defendants and/or the named Defendants and, in doing the things herein alleged, were acting within the course and scope of such agency and employment.

## III.    **SUBSTANTIAL AVERMENTS**

22.    On or about September 2007, defendant PERALES and plaintiff LA MADRID discussed the formation of a trading platform whereby defendant PERALES would act as an agent for a joint venture partnership with LA MADRID through the use of defendant H&W which was and continues to be a Texas Corporation owned by defendant PERALES.

23.    Defendant PERALES at all times represented himself to plaintiff LA MADRID as a "trader" as established by the International Chamber of Commerce.

24.    Defendant PERALES was aware that PLUS MONEY, PREMIUM FUND, PREMIUM  FUND II, and PREMIUM  FUND III were silent partners and/or investors in the trading platform and the joint venture partnership between LA MADRID and defendant H&W.

25.    Plaintiff LA MADRID informed defendant PERALES that plaintiff LA MADRID was an authorized agent acting on behalf of PLUS MONEY, the investment adviser and manager of PREMIUM  FUND, PREMIUM  FUND II, and PREMIUM  FUND III.

///

CASASLAWGROUP

26.    On or about October 11, 2007, plaintiff LA MADRID and defendant H&W entered into a Joint Venture Agreement ("AGREEMENT") whereby defendant H&W agreed to provide knowledge and experience to cause trading for the use of funds in various programs ("Trading Platform"), which included, but were not limited to, purchase of "investment grade" fixed income securities, such as Senior, Unsubordinated Medium Term Notes, and currency exchange.

27.    Defendant H&W, through defendant PERALES, also agreed to act as the agent for the AGREEMENT, and to execute all documents necessary for the benefit of the AGREEMENT.

28.    Defendant H&W's other obligations under the AGREEMENT included, but were not limited to:

      a.    Informing PLAINTIFFS of all the joint venture activities;

      b.    Providing monthly accounting of the joint venture's actions;

      c.    Wire transfer of any and all earned profits to PLAINTIFFS;

      d.    Issuing a U.S. Treasury Bill in the amount of Ten Million U.S. dollars ($10,000,000.00) ("FUNDS") within ten (10) banking days of a fully executed Standby Letter of Credit ("SLOC"), which would be unencumbered and free of all liens; and

      e.    Returning the FUNDS to PLAINTIFFS free and clear from all encumbrances.

29.    Defendants PERALES and H&W knew at all times that plaintiffs PLUS MONEY, PREMIUM FUND, PREMIUM FUND II, and PREMIUM FUND III were silent partners and/or investors in the AGREEMENT.

30.    Defendants PERALES and H&W knew at all times that plaintiffs PLUS MONEY, PREMIUM FUND, PREMIUM FUND II, and PREMIUM FUND III were third party beneficiaries of the AGREEMENT.

31.    Defendants PERALES and H&W knew at all times that plaintiff LA MADRID was an authorized agent acting on behalf of principals PLUS MONEY, PREMIUM FUND, PREMIUM FUND II, and PREMIUM FUND III.

32.    Because the AGREEMENT required the services of other traders, defendant PERALES recommended bringing defendant NEW VIKING into the AGREEMENT.

33.    In return, defendant PERALES and defendant H&W requested PLAINTIFFS' transfer of Ten Million U.S. dollars ($10,000,000.00) by SLOC to Wachovia Bank, N.A. located in Philadelphia, Pennsylvania.  However, for reasons undisclosed to PLAINTIFFS, Wachovia Bank, N.A. did not accept PLAINTIFFS' SLOC in the sum of Ten Million U.S. dollars ($10,000,000.00).

34.    Plaintiff LA MADRID is informed and believes and thereon alleges that Defendants PERALES, BJORNSSON and VAN LEENAN, owners and/or directors of defendant NEW VIKING, knew at all times that plaintiffs PLUS MONEY, PREMIUM FUND, PREMIUM  FUND II, and PREMIUM  FUND III were silent partners and/or investors in the AGREEMENT.

35.    Plaintiff LA MADRID is informed and believes and thereon alleges that Defendants PERALES, BJORNSSON and VAN LEENAN, owners and/or directors of defendant NEW VIKING, were aware that PLUS MONEY, PREMIUM FUND, PREMIUM FUND II, and PREMIUM  FUND III were silent partners and/or investors in the trading platform and the joint venture partnership between LA MADRID and defendant H&W.

36.    Defendant BJORNSSON at all times represented himself as a "trader" as established by the International Chamber of Commerce and capable of performing services for the Trading Platform AGREEMENT.

37.    On or about November 5, 2007, defendant NEW VIKING, through its legal representative Nicholas A. Clemente, P.C. ("CLEMENTE"), notified plaintiff LA MADRID of the following:

a.    CLEMENTE was NEW VIKING's legal representative;

b.    Defendant NEW VIKING was the beneficiary of the SLOC that was part of the AGREEMENT in the sum of Ten Million U.S. dollars ($10,000,000.00); and

c.    Plaintiff LA MADRID was to disregard the Wachovia Bank coordinates previously agreed upon and instead forward the FUNDS to defendant PALLADIUM and ultimately to National Interbank.

38.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendant PALLADIUM is an undisclosed subsidiary of defendant NEW VIKING.

39.    On or about November 6, 2007, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN sent a letter to plaintiff LA MADRID representing the following:

a.    Within two (2) days of plaintiff LA MADRID's transfer of Ten Million U.S. dollars ($10,000,000.00) from Bank of America to National Interbank, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN would acquire a U.S. Treasury Bill in the amount of Ten Million U.S. dollars ($10,000,000.00) to secure the FUNDS; and

b.    By November 9, 2007, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN would pay Five Hundred Thousand U.S. dollars ($500,000.00) to plaintiff LA MADRID.

40.    On November 14, 2007, plaintiff LA MADRID performed his contractual obligations created by the AGREEMENT when he  transferred Ten Million U.S. dollars ($10,000,000.00) to defendant PALLADIUM from Bank of America to National Interbank located at P.O. Box 1245, Indianapolis, Indiana, 46260-1245.

41.    On or about November 29, 2007, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN sent a letter to plaintiff LA MADRID and represented the following:

a.    Defendant New VIKING had secured plaintiff LA MADRID's Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill.

42.    Additionally, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN memorialized the following terms of an agreement with plaintiff LA MADRID in the November 29, 2007 correspondence ("NEW VIKING AGREEMENT"):

CASASLAWGROUP

a.     The remainder of the FUNDS would be placed into an escrow account in CLEMENTE'S name at Commerce Bank in Philadelphia, Pennsylvania;

b.     An account in plaintiff LA MADRID's name would also be available with Commerce Bank;

c.     Upon arrival of the FUNDS, defendant NEW VIKING would exchange the FUNDS against a SLOC, which would be delivered to Commerce Bank;

d.     Once the exchange had occurred, plaintiff LA MADRID could demand full or partial payments against the SLOC at any time; and

e.     Defendant NEW VIKING would make payments to plaintiff LA MADRID on any proceeds generated against the SLOC.

43.     The NEW VIKING AGREEMENT was signed by defendants PERALES, BJORNSSON and VAN LEENEN.

44.     To date, defendants H&W and PERALES have been unjustified in their failure to perform with respect to the AGREEMENT when defendants H&W and PERALES:

a.     Failed to adequately vet other traders involved with the trading platform;

b.     Failed to inform plaintiff LA MADRID of all activities of the joint venture;

c.     Failed to provide monthly accounting of the joint venture;

d.     Failed to wire transfer any or all earned profits from the FUNDS to plaintiff LA MADRID;

e.     Failed to issue a U.S. Treasury Bill in the amount of Ten Million U.S. dollars ($10,000,000.00); and

f.     Failed to return plaintiff LA MADRID's FUNDS despite numerous demands by plaintiff LA MADRID since January 2008.

CASASLAWGROUP

45.    To date, defendants NEW VIKING, H&W, PERALES, BJORNSSON and VAN LEENEN have been and continue to be unjustified in their failure to perform with respect to the NEW VIKING AGREEMENT because defendants NEW VIKING, H&W, PERALES, BJORNSSON and VAN LEENEN:

 a. Failed to transfer all the interest to plaintiff LA MADRID's account;

 b. Failed to secure PLAINTIFFS' Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill;

 c. Failed to exchange the FUNDS against a SLOC;

 d. Failed to deliver the FUNDS to Commerce Bank;

 e. Failed to make payments to plaintiff LA MADRID on any proceeds generated against the SLOC; and

 f. Failed to return the FUNDS to plaintiff LA MADRID despite numerous demands by plaintiff LA MADRID.

46.    Shortly after the November 14, 2007 transfer of the FUNDS, plaintiff LA MADRID discovered that defendants LOPEZ and PALLADIUM, an undisclosed subsidiary of NEW VIKING, had control of the FUNDS.

47.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendants NEW VIKING and LOPEZ/PALLADIUM have a joint venture agreement.

48.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendants LOPEZ and PALLADIUM are authorized agents acting on behalf of defendant NEW VIKING.

49.    PLAINTIFFS are informed and believe and thereon allege that as a subsidiary and agent of defendant NEW VIKING, defendants LOPEZ and PALLADIUM are also a party to the NEW VIKING AGREEMENT.

50.    As alleged above, because DEFENDANTS collectively breached the AGREEMENT and the NEW VIKING AGREEMENT, PLAINTIFFS terminated the joint venture on December 12, 2007 and demanded full payment of the Ten Million U.S. dollars ($10,000,000.00).

51.    DEFENDANTS have refused and continue to refuse to provide proof of the whereabouts of PLAINTIFFS' FUNDS and continue to refuse to provide an accounting of the FUNDS.

52.    PLAINTIFFS are informed and believe and thereon allege that on numerous occasions DEFENDANTS have utilized CLEMENTE and defendant PERALES to communicate false attempts to transfer the FUNDS to PLAINTIFFS.

53.    Between January 11, 2008 and through the date of this Complaint, defendants PERALES, NEW VIKING, H&W, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM repeatedly promised to transfer the FUNDS to PLAINTIFFS' account and provided false wire transfer numbers.

54.    PLAINTIFFS are informed and believe and thereon allege DEFENDANTS' repeated false promises and misrepresentations regarding the transfer of the FUNDS demonstrate an intent by DEFENDANTS to hinder, delay, and/or defraud PLAINTIFFS at the time the alleged transfers were made.

55.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendant LOPEZ and ASSOCIATED drafted a check with insufficient funds payable to Plaintiff LA MADRID for the full payment of the FUNDS.

56.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendant PALLADIUM, through LOPEZ, has commingled PLAINTIFFS' FUNDS with ASSOCIATED.

57.    Defendants LOPEZ and PALLADIUM allegedly forwarded a Certified Public Accountant ("CPA") letter confirming the whereabouts of the FUNDS to CLEMENTE.

58.    To date plaintiff LA MADRID has not received any principal, profits and/or interest arising from investment of the FUNDS from the AGREEMENT and the NEW VIKING AGREEMENT.

///

///

CASASLAWGROUP

59.    The Misrepresentations by defendants NEW VIKING, H&W, PERALES, BJORNSSON and VAN LEENEN, which were intended to entice plaintiff LA MADRID to invest with them, include, but are not limited to:

a.    That because of the SLOC provision in both AGREEMENTS, PLAINTIFFS' FUNDS would be secure;

b.    That NEW VIKING would issue a U.S. Treasury Bill immediately after the transfer of the FUNDS; and

c.    That the FUNDS would be used for trading within five (5) days and plaintiff LA MADRID would receive profits within ten (10) days.

60.    The Misrepresentations by defendants LOPEZ and PALLADIUM which were intended to delay and forestall plaintiff LA MADRID's inquiries about the whereabouts of the FUNDS, include, but are not limited to:

a.    Defendants LOPEZ and PALLADIUM repeatedly assured the return of the FUNDS by wire transfers in the four (4) months preceding the filing of this Complaint;

b.    Defendants LOPEZ and PALLADIUM have supplied false wire transfer numbers indicating full return of the FUNDS; and

c.    On information and belief, defendant LOPEZ and ASSOCIATED drafted a check with insufficient funds payable to plaintiff LA MADRID regarding full payment of the FUNDS.

61.    PLAINTIFFS are informed and believe and thereon allege that DEFNDANTS have no intention to secure the recovery of the FUNDS which rightfully belong to PLAINTIFFS.

62.    Defendants LOPEZ and PALLADIUM have unlawfully used the FUNDS to place unauthorized trades.

63.    Defendants LOPEZ and PALLADIUM have squandered the FUNDS on unsound investments.

///

64.    As a direct and proximate result of DEFENDANTS' actions, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense including attorney's fees, court costs, investigation costs, and lost profits.

## I.V.    THE R.I.C.O. PREDICATE ACTS

65.    DEFENDANTS conspired to and did engage in racketeering activities consisting of mail and wire fraud in violation of 18 U.S.C. §1341 and/or 18 U.S.C. §1343 by using, or causing to be used, the United States mail or interstate wire communications in furtherance of and for the purposes of executing schemes to defraud, to obtain, and to maintain money by false pretenses.  Each use of the mails or interstate wire communications in furtherance of and for the purposes of executing the schemes constitutes a separate and distinct violation of 18 U.S.C. §1341 and/or 18 U.S.C. §1343.

66.    DEFENDANTS used mail and wire communications to collect the proceeds of the fraudulent scheme by inducing PLAINTIFFS to forward payments to them, to forestall PLAINTIFFS' inquiry into DEFENDANTS' scheme, and to induce PLAINTIFFS' participation.

67.    DEFENDANTS made misrepresentations using United States mail and interstate wire communications with the intent to defraud PLAINTIFFS and PLAINTIFFS in fact reasonably relied upon DEFENDANTS' misrepresentations, including, but not limited to: the November 5, 2007 correspondence from CLEMENTE on behalf of defendant NEW VIKING; the November 6, 2007 correspondence from defendant NEW VIKING; the November 29, 2007 correspondence/agreement; and all subsequent false wire transfers DEFENDANTS allegedly made to PLAINTIFFS between January 11, 2008 and beyond April 17, 2008 through the date and filing of this Complaint.

68.    Several, but not all, specific examples of DEFENDANTS' use of U.S. mail and interstate wire communications include, but are not limited to:

CASASLAWGROUP

a.      On or about November 5, 2007, defendant NEW VIKING, through its legal representative CLEMENTE, notified plaintiff LA MADRID to disregard the Wachovia Bank coordinates previously agreed upon and instead forward the FUNDS to defendant PALLADIUM and ultimately to National Interbank;

b.      In a November 6, 2007 correspondence, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN represented that within two (2) days of plaintiff LA MADRID's transfer of Ten Million U.S. dollars ($10,000,000.00) from Bank of America to National Interbank, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN would acquire a U.S. Treasury Bill in the amount of Ten Million U.S. dollars ($10,000,000.00) to secure the FUNDS;

c.      In a November 29, 2007 correspondence, defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN represented that  defendant NEW VIKING had secured plaintiff LA MADRID's Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill;

d.      On January 11, 2008 defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS were "safe";

e.      On January 11, 2008 and January 22, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be returned through bank wire to PLAINTIFFS' account;

f.      On January 18, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired to PLAINTIFFS by defendant LOPEZ on January 18, 2008;

g.      On January 19, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS were wired by defendant LOPEZ to Commerce Bank (confirmation number 1188725DR6);

h.    On January 22, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS were wired to Vectra Bank (confirmation number 01228 -130 -641986);

i.    On January 25, 2008, defendant VAN LEENAN used the internet to inform PLAINTIFFS that the FUNDS were wired to PLAINTIFFS by defendant LOPEZ on that day;

j.    On January 28, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS were wired to PLAINTIFFS by defendant LOPEZ on that day;

k.    On January 29, 2008, defendant VAN LEENAN used the internet to inform PLAINTIFFS that the FUNDS were wired to Commerce Bank for the benefit of PLAINTIFFS;

l.    On February 6, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired by defendant LOPEZ to PLAINTIFFS on that day;

m.    On February 6, 2008, defendants VAN LEENAN,  BJORNSSON and LOPEZ used the internet to inform PLAINTIFFS that the FUNDS were wired by defendant LOPEZ to PLAINTIFFS on that day;

n.    On February 8, 2008, defendants VAN LEENAN and  BJORNSSON used the internet to guarantee  the FUNDS would be transferred to PLAINTIFFS;

o.    On February 27, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired by defendant LOPEZ to PLAINTIFFS on that day;

p.    On March 3, 2008, defendant PERALES used the internet to inform PLAINTIFFS that defendant LOPEZ instructed the wiring of the FUNDS and that the FUNDS were wired to PLAINTIFFS;

///
///

CASAS**LAW**GROUP

q.      On March 4, 2008, defendant VAN LEENAN used the internet to inform PLAINTIFFS that the FUNDS were wired to PLAINTIFFS;

r.      On March 4, 2008, defendant BJORNSSON used the internet to inform PLAINTIFFS that the FUNDS were wired to PLAINTIFFS;

s.      On March 4, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired by defendant LOPEZ to PLAINTIFFS;

t.      On March 12, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired by defendant LOPEZ to PLAINTIFFS; and

u.      On April 17, 2008, defendant PERALES used the internet to inform PLAINTIFFS that the FUNDS would be wired by defendant LOPEZ to PLAINTIFFS.

69.     To date, DEFENDANTS, despite repeated statements they were returning the FUNDS, have failed to return the FUNDS.

70.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS conspired and continue to conspire together to defraud PLAINTIFFS of Ten Million U.S. dollars ($10,000,000.00).

### FIRST CAUSE OF ACTION

(R.I.C.O. Against All Defendants and DOES 1-50)

71.     PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 70 of this Complaint.

72.     At all times relevant to this Complaint, DEFENDANTS, and each of them, were "persons" as that term is defined in 18 U.S.C. §1961(3) and as used in 18 U.S.C. §1962.  The corporate and entity Defendants engaged in a pattern of racketeering activity through persons and legal entities in their control such as CLEMENTE, ASSOCIATED, and defendants PERALES, BJORNSSON, VAN LEENEN, LOPEZ, H&W, NEW VIKING, and PALLADIUM.

73.   At all relevant times to this Complaint, all DEFENDANTS constituted an association in fact, although not a legal entity, and therefore are an "enterprise" ("ENTERPRISE") as that term is defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. § 1962.

74.   At all relevant to this Complaint, the ENTERPRISE had continuity of structure and personnel, a common or shared purpose and an ascertainable structure distinct from that inherent in the pattern of racketeering activity.   Further, the ENTERPRISE was created and existed as an ongoing association engaged in or affecting interstate commerce, and had an ascertainable structure apart from the patterns of racketeering activity alleged in this Complaint.   The members of the ENTERPRISE were linked together by more than their participation in the same patterns of racketeering activity alleged in this Complaint.

75.   At all relevant times relevant to this Complaint, the DEFENDANTS engaged in or affected interstate commerce by transacting business in numerous states and across state lines.

76.   Each of the DEFENDANTS was associated with or was employed by the ENTERPRISE and each aided and abetted and/or conspired to, and did as part of that ENTERPRISE (employment or association), conduct or participate in the conduct of the affairs of the ENTERPRISE through engaging in a pattern of racketeering activity.

77.   Each of the DEFENDANTS operated or managed the ENTERPRISE by conducting or participating, directly or indirectly, in the conduct of the ENTERPRISE's affairs.

78.   Each of the DEFENDANTS conspired to, and did, derive or receive income from a pattern of racketeering activity, some part of which was used to operate the ENTERPRISE, enabling the ENTERPRISE to defraud PLAINTIFFS, as set forth herein.

79.   As a whole, DEFENDANTS acted in concert, with specific, well-defined roles in the ENTERPRISE to achieve the common goal of defrauding PLAINTIFFS into investing into the trading platform.

CASAS**LAW**GROUP

80.    Defendant PERALES gained the trust of the PLAINTIFFS and promised a profitable investment pursuant to the AGREEMENT.

81.    Defendant PERALES guaranteed the safety of the FUNDS through the use of the SLOC and the issuance of U.S. Treasury Bills.

82.    Defendant PERALES then introduced defendants NEW VIKING and its owners VAN LEENAN and  BJORNSSON as the entity and individuals who had the experience and knowhow to operate the trading platform.

83.    Defendants NEW VIKING and its owners PERALES, VAN LEENAN and BJORNSSON then redirected the FUNDS to their subsidiary, defendant PALLADIUM, and its operator defendant LOPEZ.

84.    Once the FUNDS were converted by DEFENDANTS, defendants PERALES, VAN LEENAN and BJORNSSON repeatedly assured PLAINTIFFS that the FUNDS were "safe."

85.    Defendants PERALES, VAN LEENAN and BJORNSSON even used legitimate entities, such as CLEMENTE and ASSOCIATE, to give weight to their delaying tactics.

86.    Once DEFENDANTS ran out of excuses to delay the recovery of the FUNDS, DEFENDANTS conveniently began blaming defendant LOPEZ for the loss of the FUNDS.  Over time, however, DEFENDANTS contradicted themselves by vouching for defendant LOPEZ rather than blaming him.

87.    DEFENDANTS' acts and conduct, including the conduct of the ENTERPRISE, took place over a period of at least six (6) continuous months, were not isolated events and included multiple acts of mail fraud, wire fraud and violations of state law.

88.    DEFENDANTS have continuously engaged in criminal activities, including, but not limited to mail and wire fraud, as part of their overall scheme that took place for at least six (6) continuous months.

///

CASASLAWGROUP

89.    DEFENDANTS' pattern of racketeering activity, including mail and wire fraud, have occurred within the relevant time periods outlined in 18 U.S.C. §1961(5).

90.    Through DEFENDANTS' operation and management of the ENTERPRISE, DEFENDANTS have made or caused to be made or distributed communications by United States mail which included misrepresentations of material fact regarding investment of the FUNDS.

91.    By conducting or participating, directly or indirectly, in the conduct of the ENTERPRISE through a pattern of racketeering activity, and conspiring to conduct and participate in such racketeering activity, the DEFENDANTS, and each of them, have violated both 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) of the R.I.C.O. statute.

92.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense including attorney's fees, court costs, investigation costs, and lost profits.

93.    Pursuant to 18 U.S.C. 1964(c), PLAINTIFFS are entitled to recover from the DEFENDANTS, jointly and severally, treble damages, their costs and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
(DECLARATORY RELIEF Against All Defendants and DOES 1-50)

94.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 93 of this Complaint.

95.    Pursuant to the terms of the AGREEMENT with PLAINTIFFS, defendants PERALES and H&W agreed to wire transfer any and all earned profits to PLAINTIFFS, and agreed to issue a U.S. Treasury Bill in the amount of Ten Million U.S. dollars within ten (10) banking days of a fully executed SLOC, which would be unencumbered and free of all liens.  Defendants PERALES and H&W further agreed to return the FUNDS to PLAINTIFFS free and clear from all encumbrances.

CASASLAWGROUP

96.    Pursuant to the terms of THE NEW VIKING AGREEMENT with plaintiff LA MADRID, defendants NEW VIKING, PERALES, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM: agreed to exchange the FUNDS against a SLOC, which would be delivered to Commerce Bank; agreed to secure PLAINTIFFS' Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill; agreed to allow plaintiff LA MADRID to make a demand for full or partial payments against the SLOC at any time once the exchange had occurred; and agreed to make payments to plaintiff LA MADRID on any proceeds generated against the SLOC.

97.    Pursuant to the terms of THE NEW VIKING AGREEMENT with plaintiff LA MADRID, defendants LOPEZ and PALLADIUM, as an undisclosed subsidiary and agent of defendant NEW VIKING, also: agreed to exchange the FUNDS against a SLOC, which would be delivered to Commerce Bank; agreed to secure PLAINTIFFS' Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill; agreed to allow plaintiff LA MADRID to make a demand for full or partial payments against the SLOC at any time once the exchange had occurred; and agreed to make payments to plaintiff LA MADRID on any proceeds generated against the SLOC.

98.    An actual controversy has arisen and now exists between PLAINTIFFS and defendants PERALES and H&W concerning their respective rights and duties with respect to the AGREEMENT.

99.    An actual controversy has arisen and now exists between plaintiff LA MADRID and defendants NEW VIKING, PERALES, BJORNSSON, VAN LEENAN, LOPEZ and PALLADIUM concerning their respective rights and duties with respect to the NEW VIKING AGREEMENT.

100.    Plaintiff LA MADRID has incurred substantial expenses including attorney's fees, court costs, investigation costs, lost profits and pre-judgment interest at the legal rate.

101.    PLAINTIFFS have incurred substantial expense including attorney's fees, court costs, investigation costs, lost profits and pre-judgment interest at the legal rate.

CASASLAWGROUP

102. PLAINTIFFS therefore respectfully request this Court issue an order declaring PERALES and H&W in breach of the AGREEMENT, and to pay the whole sum of principal (i.e. $10,000,000.00), attorney's fees, court costs, investigation costs, lost profits and interest at the highest rate allowable by law.

103. PLAINTIFFS therefore respectfully request this Court issue an order declaring NEW VIKING, PERALES, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM in breach of the NEW VIKING AGREEMENT, and to pay the whole sum of principal (i.e. $10,000,000.00), attorney's fees, costs, investigation court costs, lost profits and interest at the highest rate allowable by law.

### THIRD CAUSE OF ACTION
(BREACH OF CONTRACT Against All Defendants and DOES 1-50)

104. PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 103 of this Complaint.

105. On October 11, 2007, PLAINTIFFS and defendant H&W entered into an AGREEMENT to create a trading platform.

106. On November 29, 2007, plaintiff LA MADRID and defendants NEW VIKING, PERALES, BJORNSSON and VAN LEENEN entered into the NEW VIKING AGREEMENT to accommodate and perform the AGREEMENT.

107. PLAINTIFFS are informed and believe and thereon allege that as a subsidiary and agent of defendant NEW VIKING, defendants LOPEZ and PALLADIUM are also a party to the NEW VIKING AGREEMENT.

108. PLAINTIFFS performed their contractual obligations when on November 14, 2007 PLAINTIFFS transferred Ten Million U.S. dollars ($10,000,000.00) to PALLADIUM from Bank of America to National Interbank located at P.O. Box 1245, Indianapolis, Indiana, 46260-1245.

109. To date, defendants H&W and PERALES have been and continue to be unjustified in their failure to perform when defendants H&W and PERALES failed to

CASASLAWGROUP

inform PLAINTIFFS of all activities of the joint venture, failed to provide monthly accounting of the joint venture, failed to wire transfer any or all earned profits to PLAINTIFFS, failed to issue a U.S. Treasury Bill in the amount of Ten Million U.S. dollars ($10,000,000.00); and failed to return PLAINTIFFS' FUNDS despite numerous demands by PLAINTIFFS.

110.    To date, defendants NEW VIKING, H&W, PERALES, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM have been unjustified in their failure to perform on the NEW VIKING AGREEMENT because NEW VIKING, H&W, PERALES, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM failed to transfer any interest to plaintiff LA MADRID's account, failed to secure PLAINTIFFS' Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill, failed to exchange the FUNDS against a SLOC, failed to deliver the FUNDS to Commerce Bank, failed to make payments to plaintiff LA MADRID on any proceeds generated against the SLOC, and failed to return the FUNDS to plaintiff LA MADRID despite numerous demands by plaintiff LA MADRID.

111.    As a direct and proximate result of defendants PERALES, H&W, NEW VIKING, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM's breach, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense, including attorney's fees, court costs, investigation costs, and lost profits.

### FOURTH CAUSE OF ACTION
(CONSTRUCTIVE TRUST Against All Defendants and DOES 1-50)

112.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 111 of this Complaint.

113.    On November 14, 2007, plaintiff LA MADRID transferred Ten Million U.S. dollars ($10,000,000.00) to NEW VIKING from Bank of America to National Interbank located at P.O. Box 1245, Indianapolis, Indiana, 46260-1245.

CASASLAWGROUP

114.    DEFENDANTS guaranteed that plaintiff LA MADRID could demand full or partial payments against the SLOC from DEFENDANTS at any time.

115.    Shortly after the November 14, 2007 transfer of the FUNDS, plaintiff LA MADRID discovered that defendants LOPEZ and PALLADIUM, an undisclosed subsidiary and agent of NEW VIKING, were actually in charge of the FUNDS.

116.    Plaintiff LA MADRID is informed and believes and thereon alleges that defendant PALLADIUM has commingled PLAINTIFFS' FUNDS with ASSOCIATED.

117.    With monies and proceeds from the conduct alleged above, DEFENDANTS have placed unauthorized trades, acquired personal and/or real property, and have deposited funds into various accounts, including but not limited to savings accounts, checking accounts, offshore accounts, and/or other investment accounts.

118.    Due to the nature of the conduct alleged above, PLAINTIFFS have not been able to identify the exact location of the monies used to place unauthorized trades, acquire personal and/or real property, and deposited into various accounts, including but not limited to savings accounts, checking accounts, offshore accounts, and/or other investment accounts.

## FIFTH CAUSE OF ACTION
(MONEY HAD AND RECEIVED Against All Defendants and DOES 1-50)

119.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 118 of this Complaint.

120.    Defendants NEW VIKING, PERALES, BJORNSSON, VAN LEENEN, LOPEZ, and PALLADIUM received Ten Million U.S. dollars ($10,000,000.00) from PLAINTIFFS, which belong to PLAINTIFFS in equity.

121.    The Ten Million U.S. dollars ($10,000,000.00) was not used for the benefit of PLAINTIFFS.

122.    PLAINTIFFS have demanded the Ten Million U.S. dollars ($10,000,000.00) and the interest back from DEFENDANTS.

CASASLAWGROUP

123.    DEFENDANTS have refused and continue to refuse to provide proof of the whereabouts of PLAINTIFFS' FUNDS, continue to refuse to provide an accounting of the FUNDS, and refuse to return the FUNDS.

124.    As a direct and proximate result of the actions of DEFENDANTS, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense including attorney's fees, court costs, investigation costs, and lost profits.

### SIXTH CAUSE OF ACTION
(CONVERSION Against All Defendants and DOES 1-50)

125.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 124 of this Complaint.

126.    PLAINTIFFS transferred Ten Million U.S. dollars ($10,000,000.00) for investment purposes from Bank of America to National Interbank located at P.O. Box 1245, Indianapolis, Indiana, 46260-1245.

127.    DEFENDANTS received Ten Million U.S. dollars ($10,000,000.00) from PLAINTIFFS.

128.    DEFENDANTS guaranteed that plaintiff LA MADRID could demand full or partial payments against the SLOC from DEFENDANTS at any time.

129.    PLAINTIFFS have an immediate right to possession of the Ten Million U.S. dollars ($10,000,000.00) because PLAINTIFFS have demanded the Ten Million U.S. dollars ($10,000,000.00) and the interest back from DEFENDANTS.

130.    DEFENDANTS have wrongfully withheld the Ten Million U.S. dollars ($10,000,000.00) and refuse to return the FUNDS despite numerous demands by PLAINTIFFS.

131.    As a direct and proximate result of the actions of DEFENDANTS, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS

CASA**LAW**GROUP

have also incurred substantial expense, including attorney's fees, court costs, investigation costs, and lost profits.

## SEVENTH CAUSE OF ACTION

(ACTUALLY FRAUDULENT TRANSFERS Against All Defendants and DOES 1-50)

132.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 131 of this Complaint.

133.    At all relevant times to this Complaint, each of the Plaintiffs was and is a "creditor" as that term is described in 11 U.S.C. § 101 and as used in California Civil Code § 3439.01.

134.    From January 11, 2008 and through the date of this Complaint, defendants PERALES, NEW VIKING, H&W, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM transferred assets belonging to PLAINTIFFS without PLAINTIFFS' knowledge and consent.

135.    Defendants LOPEZ and PALLADIUM have unlawfully used the FUNDS to place unauthorized trades.

136.    PLAINTIFFS are informed and believe and thereon allege DEFENDANTS' repeated false promises and misrepresentations regarding the transfer of the FUNDS demonstrate an intent by DEFENDANTS to hinder, delay, and/or defraud PLAINTIFFS at the time the alleged transfers were made.

137.    PLAINTIFFS are informed and believe and thereon allege DEFENDANTS' placement of unauthorized trades demonstrate an intent by DEFENDANTS to hinder, delay, and/or defraud PLAINTIFFS at the time the alleged transfers were made.

## EIGHTH CAUSE OF ACTION

(COMMON LAW FRAUD Against All Defendants and DOES 1-50)

138.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 137 of this Complaint.

///

///

CASALAWGROUP

139.   On November 29, 2008 Defendants NEW VIKING, H&W, PERALES, BJORNSSON, LOPEZ and VAN LEENEN falsely promised and made the following misrepresentations to plaintiff LA MADRID:

a.   Because of the SLOC provision, PLAINTIFFS' FUNDS would be secure;

b.   Defendant NEW VIKING had secured plaintiff LA MADRID's Ten Million U.S. dollars ($10,000,000.00) with a U.S. Treasury Bill; and

c.   The FUNDS would be used for trading within five (5) days and plaintiff LA MADRID would receive profits within ten (10) days.

140.   Between January 11, 2008 and through the date of this Complaint, DEFENDANTS made numerous misrepresentations regarding the FUNDS to PLAINTIFFS, as alleged and set forth in paragraphs 38, 40, 41, 52, 58, 59, and 67.

141.   Between January 11, 2008 and through the date of this Complaint, DEFENDANTS made numerous misrepresentations regarding transfer of the FUNDS to PLAINTIFFS when DEFENDANTS provided false wire numbers, as alleged and set forth in paragraphs 59 and 67.

142.   The misrepresentations and false promises alleged above were material because they induced plaintiff LA MADRID to invest with defendants NEW VIKING, H&W, PERALES, BJORNSSON and VAN LEENEN.

143.   The misrepresentations and false promises alleged above regarding return of the FUNDS were material because they induced plaintiff LA MADRID into forestalling litigation against all DEFENDANTS to recover the FUNDS.

144.   Defendants NEW VIKING, H&W, PERALES, BJORNSSON and VAN LEENEN and LOPEZ knew that the misrepresentations and/or false promises of other defendants and their own misrepresentations and/or false promises regarding the security of PLAINTIFFS' FUNDS, the issuance of a U.S. Treasury Bill, the expected profits, and the transfer of the FUNDS back to PLAINTIFFS were false, or were made with reckless disregard as to the truth or falsity thereof.

145.   Each misrepresentation and/or false promise alleged above regarding the FUNDS was made to PLAINTIFFS with the intent to induce PLAINTIFFS to alter PLAINTIFFS' position or risk by investing with DEFENDANTS.

146.   Each misrepresentation and/or false promise alleged above was made to PLAINTIFFS with the intent to defraud or deceive PLAINTIFFS so as to convince PLAINTIFFS to invest with DEFENDANTS.

147.   PLAINTIFFS reasonably and justifiably relied on the misrepresentations and/or false promises to their detriment by entering into the AGREEMENT and/or the NEW VIKING AGREEMENT.

148.   PLAINTIFFS reasonably and justifiably relied on the misrepresentations and/or false promises to their detriment by investing Ten Million U.S. dollars ($10,000,000.00) with DEFENDANTS.

149.   As a direct and proximate result of the actions of DEFENDANTS, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense, including attorney's fees, court costs, investigation costs, and lost profits.

**NINTH CAUSE OF ACTION**
(CIVIL THEFT Against All Defendants and DOES 1-50)

150.   PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 149 of this Complaint.

151.   California Penal Code section 484(a) provides in pertinent part as follows:

Every person who shall feloniously steal . . . the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him . . . or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . .or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon

CASAS**LAW**GROUP

any person, obtains credit and thereby fraudulently gets or obtains

possession of money . . . of another, is guilty of theft.

152.    California Penal Code Section 496(a) provides in pertinent part as

follows:

> Every person who buys or receives any property that has been stolen
> or that has been obtained in any manner constituting theft or extortion,
> knowing the property to be so stolen or obtained, or who conceals,
> sells, withholds, or aids in concealing, selling, or withholding any
> property from the owner, knowing the property to be so stolen or
> obtained, shall be punished by imprisonment in a state prison, or in a
> county jail for not more than one year.

153.    California Penal Code Section 496(c) provides a civil remedy as follows:

> Any person who has been injured by a violation of subdivision (a) or (b)
> may bring an action for three times the amount of actual damages, if
> any, sustained by the plaintiff, costs of suit, and reasonable attorney's
> fees.

154.    PLAINTIFFS transferred Ten Million U.S. dollars ($10,000,000.00) for investment purposes from Bank of America to National Interbank located at P.O. Box 1245, Indianapolis, Indiana, 46260-1245.

155.    DEFENDANTS received Ten Million U.S. dollars ($10,000,000.00) from PLAINTIFFS.

156.    DEFENDANTS guaranteed that plaintiff LA MADRID could demand full or partial payments against the SLOC from DEFENDANTS at any time.

157.    PLAINTIFFS have demanded the Ten Million U.S. dollars ($10,000,000.00) and the interest back from DEFENDANTS.

158.    The DEFENDANTS, and each of them, with an intent to permanently deprive PLAINTIFFS of Ten Million U.S. dollars ($10,000,000.00), fraudulently

CASASLAWGROUP

1   appropriated money which had been entrusted to them, and/or knowingly and
2   designedly, by false representation or pretense, obtained Ten Million U.S. dollars
3   ($10,000,000.00) belonging to PLAINTIFFS.

4        159.   The DEFENDANTS, and each of them, while knowing the Ten Million U.S.
5   dollars ($10,000,000.00) belonged to PLAINTIFFS have aided in concealing and/or
6   withholding the FUNDS from PLAINTIFFS.

7        160.   The above-referenced conduct alleged above constitutes theft in violation
8   of California Penal Code 484 and 496 and gives rise to civil liability under California
9   Penal Code Section 496(c).

10       161.   As a direct and proximate result of the actions of DEFENDANTS,
11  PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars
12  ($10,000,000.00) or more, according to proof, plus pre-judgment interest.  Pursuant to
13  California Penal Code Section 496(c), PLAINTIFFS are entitled to: (a) three times the
14  amount of their damages; (b) costs of suit and (c) reasonable attorney's fees.

15       162.   The conduct of DEFENDANTS, and each of them, was willful, oppressive,
16  fraudulent and malicious and in conscious disregard of the rights of PLAINTIFFS so as
17  to justify the imposition of punitive damages against DEFENDANTS, and each of them,
18  pursuant to California Civil Code Section 3294, in an amount to be determined by the
19  trier of fact.

20                         **TENTH CAUSE OF ACTION**
21              (NEGLIGENCE Against All Defendants and DOES 1-50)

22       163.   PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through
23  162 of this Complaint.

24       164.   At all relevant times, DEFENDANTS had a duty to PLAINTIFFS to exercise
25  reasonable care in their dealings and advisement to PLAINTIFFS regarding the
26  investment of the FUNDS.

27  ///

28  ///

165.   DEFENDANTS, and each of them, breached their duties and were negligent in their actions, misrepresentations and omissions toward PLAINTIFFS, in that they:

    a.    Failed to adequately vet other traders involved with the trading platform;

    b.    Failed to inform plaintiff LA MADRID of all activities of the joint venture;

    c.    Failed to provide monthly accounting of the joint venture;

    d.    Failed to wire transfer any or all earned profits to plaintiff LA MADRID; and

    e.    Guaranteed that because of the SLOC provision, PLAINTIFFS' FUNDS would be secure.

166.   But for the breach of duties outlined above, PLAINTIFFS would be in possession of their Ten Million U.S. dollars ($10,000,000.00).

167.   But for the breach of duties outlined above, PLAINTIFFS would have received expected profits for the investment of Ten Million U.S. dollars ($10,000,000.00).

168.   The breach of duties outlined above is the proximate result of PLAINTIFFS' damages because failure to abide by ordinary business practices and/or to research the viability of security instruments such as the SLOC, are foreseeable harmful conduct.

169.   As a direct and proximate result of the actions of DEFENDANTS, PLAINTIFFS have suffered damages in the amount of Ten Million U.S. dollars ($10,000,000.00) or more, according to proof, plus pre-judgment interest. PLAINTIFFS have also incurred substantial expense, including attorney's fees, court costs, investigation costs, and lost profits.

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for relief against DEFENDANTS, and each of them as follows:

170.   For an order declaring PERALES and H&W in breach of the AGREEMENT, and to pay the whole sum of principal (i.e. $10,000,000.00), attorney's fees, court costs, investigation costs, lost profits and interest at the highest rate allowable by law;

171.   For an order NEW VIKING, PERALES, BJORNSSON, VAN LEENEN, LOPEZ and PALLADIUM in breach of the NEW VIKING AGREEMENT, and to pay the whole sum of principal (i.e. $10,000,000.00), attorney's fees, costs, investigation court costs, lost profits and interest at the highest rate allowable by law;

172.   For compensatory damages according to proof at trial;

173.   For general, presumed and/or special damages according to proof at trial;

174.   For treble damages according to proof at trial;

175.   For an award of punitive damages against any and/or all DEFENDANTS;

176.   For pre-judgment interest on damages according to proof;

177.   For attorney fees and costs of suit under any applicable statutory basis; and

178.   For any other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///
///
///

COMPLAINT OF MATTHEW LA MADRID d.b.a. VISION QUEST INVESTMENTS

CASAS**LAW**GROUP

1

## JURY TRIAL DEMAND

2

PLAINTIFFS hereby formally request to have a trial by jury in relation to the

3

causes of action and the issues that are properly the subject of such trial.

4

5
Respectfully submitted,

6
Dated:  5/06/08
CASAS LAW GROUP, P.C.

7

8

9

10
By: Joseph N. Casas

11
Attorney for Plaintiffs Mathew La Madrid
d.b.a. Vision Quest Investments, Plus

12
Money, Inc., Premium Return Fund
Limited Liability Limited Partnership,

13
Premium Return Fund II Limited Liability
Limited Partnership, and Premium Return

14
Fund III Limited Liability Limited
Partnership

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT OF MATTHEW LA MADRID d.b.a. VISION QUEST INVESTMENTS

CASASLAWGROUP

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Matthew la Madrid d.b.a. Vision Quest Investments et al.

**(b)** County of Residence of First Listed Plaintiff   San Diego

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Casas Law Group, P.C., 2323 Broadway, Suite 202, SD, CA 92102

## DEFENDANTS

Heriberto Lopez Perales et al.   2008 MAY -7 AM 9: 36

County of Residence of First Listed Defendant   Hidalgo

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 0823 BEN POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 u.s.c. section 1962(c) and (d)

Brief description of cause:
The corporate and entity defendants engaged in a pattern of racketeering activity.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:    JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   05/06/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 150516  AMOUNT $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

TD 05/07/08